UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KITO Group, Ltd.,<br>    *Plaintiff*,<br><br>    *v.*<br><br>RF International, Ltd. and Ocean World Lines, Inc.,<br>    *Defendants*. | Civil No. 3:09cv1371 (JBA)<br><br><br><br>July 2, 2010 |

RULING ON PLAINTIFF'S MOTION TO REMAND [Doc. # 6]

Plaintiff KITO Group, Ltd. ("KITO") brought suit in state court[1] against Defendants RF International, Ltd. ("RFI") and Ocean World Lines, Inc. ("OWL"), alleging that each of the Defendants converted to its own use goods that KITO had contracted with them to ship from China to the United States. KITO brought five state–law claims against each Defendant, claiming (1) conversion, (2) civil theft, (3) tortious interference with contract and/or business relations and prospective economic advantage, (4) violation of the Connecticut Unfair Trade Practices Act, and (5) accounting. Defendants removed the action to this Court, first claiming it has original maritime jurisdiction under 28 U.S.C. § 1333, and later claiming the existence of federal–question jurisdiction under 28 U.S.C. § 1331. (Not. Remov. [Doc. # 1] at 1; Defs.' Suppl. Opp'n Remand [Doc. # 12] at 1.) KITO has now moved to remand the action to state court, claiming that this Court lacks subject–matter jurisdiction. For the reasons that follow, this action will be remanded.

---

[1] KITO filed this action in the Connecticut Superior Court, Judicial District of Middlesex, at Middletown, where it bore docket number MMX–CV–09–6000710.

I.  Facts

Although the parties' briefing contains numerous assertions of fact, none of these asserted facts are supported by any evidentiary submissions.  KITO's complaint alleges the following facts.  "KITO entered into an agreement with RFI" under which RFI would "transport a shipment of trampoline accessories from . . . China to a KITO client (Sundance Trampolines) in Vancouver, British Columbia, Canada," and under which "KITO would directly pay all shipping costs directly to RFI upon receipt of an invoice from RFI after successful shipment to Canada."  (Compl., Ex. A to Not. Remov., at Count One at ¶¶ 6–7.)  Independent of its contract with RFI, "KITO entered into an agreement with OWL" under which OWL would "transport a shipment of trampoline accessories from . . . China to a KITO client (Rebound Unlimited) in Smithfield, Utah," and under which, again, "KITO would directly pay all shipping costs directly to OWL upon receipt of an invoice from OWL after successful shipment to Utah."  (*Id.* at Count Six at ¶¶ 6–7.)  However, upon arrival in Canada and Utah, RFI and OWL, respectively, "placed the subject trampoline accessories in [their] own facilit[ies], for [their] own use and refused to deliver th[ese] shipment[s] to either KITO or KITO's customer," because each Defendant alleged that KITO owed it a debt.  (*Id.* at Count One at ¶ 8; *id.* at Count Six at ¶ 8.)

II.  Standard

"[T]he party asserting jurisdiction bears the burden of proving that the case is properly in federal court."  *United Food & Commercial Workers Union, Local 919, AFL–CIO*

*v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Thus, "'[w]here, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper.'" *Calif. Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (quoting *CenterMark Props.*, 30 F.3d at 301). "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1194–95 (2010).

III.    Discussion

Defendants assert the existence of subject–matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1333 under either of two statutes: the Carmack Amendment, 49 U.S.C. § 14706(a), or the Carriage of Goods by Sea Act ("COGSA"), note following 46 U.S.C. § 30701.[2]

    A.    The Carmack Amendment, 49 U.S.C. § 14706(a)

Defendants first asserts that KITO's claims against OWL are preempted by the Carmack Amendment because "the goods at issue were shipped in interstate commerce." After the parties submitted their briefs, the Supreme Court in *Kawasaki Kisen Kaisha Ltd. v. Regal–Beloit Corp.*, 561 U.S. ----, 2010 WL 2471056 (June 21, 2010), analyzed that portion of the Carmack Amendment governing liability for rail carriers, 49 U.S.C. § 11706(a), which

---

[2] Both KITO and OWL are citizens of Delaware, so complete diversity is lacking in this case. 28 U.S.C. § 1332. Defendants do not assert the existence of diversity jurisdiction.

is substantively identical in pertinent part to that portion of the Carmack Amendment governing liability for motor carriers, 49 U.S.C. § 14706(a).[3] In *Kawasaki*, the Supreme Court held that the Carmack Amendment "does not apply to a shipment originating overseas under a single through bill of lading"[4] because the statute covers only those carriers which it requires to issue bills of lading; because it only requires "receiving carrier[s]" to issue bills of lading; and because "[a] receiving carrier is the initial carrier, which 'receives' the property for *domestic* . . . transportation at the journey's point of origin." *Id.* at *8 (emphasis added; quoting 49 U.S.C. § 11706(a), which is substantively identical to § 14706(a)).[5] Thus, *Kawasaki* draws a distinction, for purposes of the Carmack Amendment's coverage, between bills of lading issued by receiving carriers inside and outside the United States. Only the former are governed by the Carmack Amendment.

---

[3] Defendants assert, without submission of an evidentiary record, that "[o]nce the goods arrived at port from China, they were loaded onto a truck and shipped to Utah." (Defs.' Suppl. Opp'n Remand at 1.) If trucks were used to transport KITO's goods, section 14706, rather than section 11706, would be the relevant portion of the Carmack Amendment. Because the provisions are identical in pertinent part, under *Kawasaki* the analysis remains the same.

[4] "A bill of lading 'records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage.' A through bill of lading covers both the ocean and inland portions of the transport in a single document." *Kawasaki*, 2010 WL 2471056, at *4 (quoting and citing *Norfolk Southern R. Co. v. James N. Kirby*, 543 U.S. 14, 18–19, 25–26 (2004)).

[5] It appears undisputed by the parties that if the Carmack Amendment preempts KITO's claims against Defendants, the Court would have federal–question subject–matter jurisdiction over those claims. *See id.* § 14706(d)(1) ("A civil action under this section may be brought against a delivering carrier in a district court of the United States or in a State court.").

4

In this case, KITO alleges that OWL and RFI each agreed to transport KITO's goods from China to North America, but its complaint is silent as to whether the "agreement[s]" it reached with OWL and RFI were bills of lading at all, and if so, whether they were through bills of lading for shipments originating overseas. Defendants, who assert the existence of jurisdiction, have proffered no documents, affidavits, depositions, or other evidence—in short, they have proffered no "competent proof," *Hertz Corp.*, 130 S. Ct. at 1194–95—addressed to the status of KITO's agreements with them (i.e., whether they were bills of lading) or to the location at which those agreements contemplated Defendants would "receive" KITO's goods. The factual premise for application of the Carmack Amendment is thus unclear. Defendants cannot be said to have met their burden to show that the Carmack Amendment applies to and preempts KITO's claims against them, particularly in light of the KITO's allegation that OWL and RFI each agreed to ship goods from overseas; Defendants' assertion, without submission of any evidentiary record, that there were "through bills of lading issued as to both shipments," and that "[t]hese bills covered the entire transport, including the overland portion" (*see* Defs.' Opp'n Remand [Doc. # 7] at 4, 7); and the Supreme Court's recent observation of "the popularity of 'through' bills of lading, in which cargo owners can contract for transportation across oceans and to inland destinations in a single transaction," *Norfolk Southern R. Co. v. James N. Kirby*, 543 U.S. 14, 25–26 (2004). Defendants' reliance on the Carmack Amendment to show jurisdiction is thus unavailing.

B.	The Carriage of Goods by Sea Act, note following 46 U.S.C. § 30701

Defendants' argument that the COGSA provides this Court with subject–jurisdiction is also unavailing. "COGSA has the force of federal law at sea ('tackle–to–tackle') but is stripped of its statutory power during the land portion of the shipment's journey ('beyond the tackles')." *Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc.*, 547 F.3d 351, 354 (2d Cir. 2008). COGSA permits parties to contractually extend COGSA's coverage beyond the tackles, *see, e.g.*, *Kirby*, 543 U.S. at 21, and disputes governed by a bill of lading—that is, a contract—that so extends COGSA to the inland portion of a journey gives rise to subject–matter jurisdiction only where the court may invoke "the Constitution's grant of admiralty jurisdiction to federal courts," which extends to grant courts "authority to make decisional law for the interpretation of maritime contracts," *id.* at 23; *see also id.* ("Indeed, for federal common law to apply in these circumstances, this suit *must* also be sustainable under the admiralty jurisdiction."). KITO brings only tort claims and does not bring any breach–of–contract claims, however,[6] *compare id.* at 22–23, so the rule applied in *Kirby*, under which the existence of maritime jurisdiction over contract claims "depends upon the nature and character of the contract," with "the true criterion [being] whether it has reference to maritime service or maritime transactions," *id.* at 24 (alterations in *Kirby*

---

[6] Against each Defendant KITO asserts a claim for tortious interference with contract (*see* Compl. at Counts Three and Eight), but where, as here, that claim is not accompanied by a contract claim, the tortious–interference–with–contract cause of action sounds in tort, not contract. *See Birch v. Williams*, 82 Conn. App. 728, 733 (2004).

omitted), has no application here.[7]

Maritime jurisdiction also exists over some torts. The Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 30101,[8] "invest[s] admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 532 (1995) (quoting Act). The party—here, Defendants—"seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions *both* of location and of connection with maritime activity," *Grubart*, 513 U.S. at 534 (emphasis added). This case does not satisfy the "condition[] . . . of location."

"A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* Defendants do not show that KITO's claims against either OWL or RFI satisfy the condition of location because OWL's alleged conversion resulted in injury that KITO sustained in Utah (a landlocked state), and RFI's alleged conversion resulted in injury that KITO sustained in Vancouver (i.e., a city on land and outside the United States). Neither OWL's nor RFI's "facilit[ies]," where Defendants allegedly converted the goods, are alleged

---

[7] In any event, COGSA only applies to "contracts for carriage of goods by sea to or from ports of the United States in foreign trade," 46 U.S.C. § 30701 note § 13, but KITO's complaint is silent as to the port or ports at which its shipments were received, and Defendants have proffered no evidence that either shipment was received at a "port[] of the United States."

[8] The Extension of Admiralty Jurisdiction Act was formerly cited as 46 App. U.S.C. § 740.

to be "on navigable water." Moreover, none of KITO's injuries are alleged to have been "caused by a ship or other vessel"—indeed, KITO does not allege that any vehicle whatsoever caused its injuries, and instead charges Defendants with having converted its goods, not damaged them in transit.

For these reasons, neither COGSA nor the Extension of Admiralty Jurisdiction Act provides this Court with subject–matter jurisdiction over KITO's claims against either OWL or RFI.

IV.   Conclusion

For the reasons stated above, this Court lacks subject–matter jurisdiction over any of KITO's claims, and Plaintiff's Motion to Remand [Doc. # 6] is therefore GRANTED. The Clerk is directed to remand this case to the Connecticut Superior Court, Judicial District of Middlesex, at Middletown.

                                          IT IS SO ORDERED.


                                          /s/
                                          Janet Bond Arterton, U.S.D.J.


                    Dated at New Haven, Connecticut this 2d day of July, 2010.